# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

*UNITED STATES OF AMERICA*          **ELECTRONIC CRIMINAL COMPLAINT**

*v.*                                          **CASE NUMBER:** 20-4133 MJ

*STALLONE IRVING WATAHOMIGIE*

I, the undersigned complainant, state under oath that the following is true and correct to the best of my knowledge and belief:

## COUNT 1

On or about June 26, 2020, in the District of Arizona, in Coconino County, within the confines of the Grand Canyon National Park, an area within the special maritime and territorial jurisdiction of the United States, the defendant, STALLONE IRVING WATAHOMIGIE, an adult male, did unlawfully kidnap, seize, confine, abduct, carry away, and hold for his benefit, A.B., an adult female, in violation of Title 18, United States Code, Sections 7 and 1201(a)(2).

I further state that I am a Law Enforcement Ranger with the U.S. National Park Service, and that this Complaint is based on the following facts: **SEE ATTACHED AFFIDAVIT.**

Continued on the attached sheet and made a part hereof:   ☒   Yes   ☐   No

REVIEWED BY: *s/AUSA Paul V. Stearns*

**Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.**

Executed on: ___July 20, 2020___

__X__   Sworn by Telephone

Brian Densmore, Ranger, National Park Service
Complainant's Name and Title

Complainant's Signature

July 20, 2020
Date

Flagstaff, Arizona
City and State

Camille D. Bibles, United States Magistrate Judge
Name & Title of Judicial Office

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2020.07.20 17:25:13 -07'00'

Signature of Judicial Officer

USM & PTS (by clerk)

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

### **ELECTRONICALLY SUBMITTED AFFIDAVIT**

Your affiant, United States Park Ranger Brian Densmore, states under oath the following:

1.     I am a Commissioned United States Park Ranger (USPR) with the National Park Service (NPS), United States Department of the Interior, and am presently assigned to the Intermountain Region, duty stationed at Grand Canyon National Park in the State of Arizona. I have been employed by the NPS since 2007. I have worked in the role of a U.S Park Ranger in Oregon, Colorado, Pennsylvania, Washington, and Arizona. I have received training at the Federal Law Enforcement Training Center, completing the Land Management Police Training Program.

2.     The information contained in this affidavit is based upon my personal knowledge, training, experience, as well as information provided by other law enforcement officers and witnesses including those listed herein. Because this affidavit is being written to establish probable cause, I have not included every fact known to me regarding this investigation.

### **Background**

3.     The case involves a domestic dispute between Stallone Irving Watahomigie (Watahomigie) and his then-girlfriend, whose initials are A.B. In summary, Watahomigie got mad at A.B. and pinned her to a bed with his knees. He

also put his hands over her mouth and refused to let her go. A.B. suffered mild injuries, including bruising to both her medial biceps, during this incident.

4.      This incident occurred on June 26, 2020, in a residence in Supai Camp, which is within the confines of the Grand Canyon National Park in the District of Arizona. The Grand Canyon National Park is an area within the special maritime and territorial jurisdiction of the United States.

5.      A witness, who has the initials L.W. Jr., and A.B.'s six-year old daughter were also present during this incident.

### Investigation

6.      On June 26, 2020, NPS Rangers Travis Whisenhunt, Adam Sherman, and I were dispatched to a report of an assault of a female (A.B.) by her boyfriend. The victim was found to be A.B., and the suspect was found to be Watahomigie. The incident was taking place at L.W. Sr.'s residence in Supai Camp, which is within the confines of the Grand Canyon National Park in the District of Arizona.

7.      I personally interviewed A.B. while on scene the night of June 26, 2020. Officers Travis Whisenhunt interviewed a witness, L.W., Jr.  I additionally interviewed A.B. later the same night at a hotel following the incident. Special Agent (SA) Mike Hardin interviewed A.B. in the same hotel the following day. I was present for much of SA Hardin's interview.

8.      According to A.B., as Watahomigie drank more alcohol, he became increasingly upset with A.B. over money and jealousy.  A.B. reported that

Watahomigie then took A.B.'s phone, a Samsung Galaxy S9+, and began to search through the contents, particularly social media and text messages. The phone belongs to A.B., and she did not share it with Watahomigie. A.B. did not share any passwords, but Watahomigie was able to guess the passwords to access the phone content.

9. A.B. reported that she repeatedly asked Watahomigie for her phone back. Watahomigie said "no" many times, and he threw the phone out of a window. Watahomigie then retrieved the phone before A.B. could reach it.[1]

10. According to A.B., as Watahomigie continued to search the contents of her phone, he eventually called A.B. into the bedroom. A.B. again asked for the return of her phone so she could leave, and Watahomigie again refused to return the phone. A.B. reported that Watahomigie got up and locked the door. A.B. said that Watahomigie then got on top of her and pinned her to the bed.

11. A.B. reported that Watahomigie placed his knees on her medial biceps, pinning her to the bed. I observed contusions during the initial response to the 911 call reporting the assault. The contusions were more developed several hours later when viewed in better light. The contusions were again further developed when

---

[1] A.B. reported that she eventually left the residence in Supai Camp without her phone because she was concerned that she might be with further injured by Watahomigie. According to A.B., by July 1, 2020, she was able to have a friend retrieve the phone and deliver it to her. However, the passwords had been changed, A.B. did not have access to the contents of the phone, and she did not have the ability to use the phone when initially returned.

viewed by investigators SA Hardin and I the following evening. I observed bilateral contusions, found on A.B.'s medial biceps, about halfway between the shoulder and elbow. The contusions were about the size of a golf ball in area.

12.     A.B. reported that during the assault by Watahomigie, she yelled to be let go, and she fought to be released, initially by pushing Watahomigie away and then by kicking her legs. A.B. said that she was unable free herself, as her legs were hanging off the end of the bed, and she was unable to generate any force to remove Watahomigie.

13.     A.B. further reported that while she was yelling for Watahomigie to let her go, Watahomigie placed his hand over her mouth muting her screams. A.B. estimated that about 30 seconds passed with Watahomigie's hand placed over her mouth.   A.B. reported that despite A.B.'s repeated requests to let her go, Watahomigie kept her pinned to the bed for several minutes.

14.     A.B. reported that Watahomigie did not choke or strike her during the assaults; however, A.B. said she was afraid both times and that she was concerned of complicating an existing neck injury known to Watahomigie.

15.     According to A.B., during the incident, a witness, L.W. Jr., was sought out by A.B.'s juvenile daughter. A.B.'s daughter requested help from L.W. Jr. and also called 911. A.B. was freed only after L.W. Jr. reached through a hole in the door to unlock it. L.W. Jr then forcibly tackled Watahomigie off of A.B. L.W. corroborated A.B.'s report, saying he "wrestled" Watahomigie off of A.B. A.B.'s

4

daughter initially called 911, quickly giving the phone to A.B.   A.B. reported Stallone Watahomigie had just assaulted her.

16.     A.B. reported that after L.W. Jr. got Watahomie off of her, she then attempted to leave in her car.  However, A.B. reported that Watahomigie continued to impede her movements, in that he ran and entered her vehicle.  Upon entry to A.B.'s vehicle, Watahomigie locked the doors of the car and prevented A.B. from leaving.  While A.B. was on the phone with the 911 center, Watahomigie exited the car and came at A.B. and her daughter.  However, A.B. was able to enter her car with her daughter and drive away.

17.     Based on my investigation, Watahomigie is an adult male who is 24-years old.  He is approximately 5'9" tall and weighs about 155 pounds.  A.B. is and adult female who is 37 years old.  She is approximately 5'5" tall and weighs about 195 pounds.

18.     According to A.B., she was in a dating and intimate relationship with Watahomigie for approximately two years.  They have no children in common.

19.     Based on a review of Watahomigie's criminal history, he has a prior arrest and conviction from a 2017 incident in the Grand Canyon for assault.

## Conclusion

20.     Based on the above, I believe there is probable cause to support that on or about June 26, 2020, within Grand Canyon National Park in the District of

Arizona, Stallone Irving Watahomigie violated federal law under 18 U.S.C. §§ 7 & 1201(a)(2)(b).

**Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct to the best of my knowledge and belief.**

July 20, 2020
Executed on (Date)

Brian Densmore
US Park Ranger (Law Enforcement)
Department of Interior, NPS

_X___ Sworn by Telephone

Date/Time: _____

**Camille D. Bibles**
Digitally signed by Camille D.
Bibles
Date: 2020.07.20 17:25:54 -07'00'

Camille D. Bibles
United States Magistrate Judge

6